**Bessie SPILLER, et al., Appellants,**

v.

**Beatrice WOODARD, et al., Appellees.**

**No. 01–89–001169–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 2, 1991.

David Bosworth, San Antonio, for appellants.

Hugh L. Scott, Jr., San Antonio, for appellees.

Before DUGGAN, MIRABAL and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This Court is called upon to determine if the defendants' possession of the property was sufficiently adverse to put the plaintiffs, their cotenants, on notice. We hold it was not. We reverse the judgment for the defendants, we render judgment for the plaintiffs, and we remand for partition by the trial court.

## Statement of facts

The plaintiffs [1] and the defendants [2] represent two branches of a family descending from the patriarch Nat Fanuiel, from whom they inherited land in Brazoria County, the property in dispute. Fanuiel acquired the property in 1871, and in 1917, after his death, a judgment was rendered that conveyed an undivided one-half interest in the 60-acre tract to the plaintiffs and an undivided one-half interest in the defendants. From 1917, defendants maintained continual occupancy, use, and possession of the 60-acre tract and paid all taxes. Defendants constructed, improved, and maintained two residences on the 60-acre tract at their cost. During that time, plaintiffs did not occupy, use, contribute to the improvements, or pay taxes on the property.

Plaintiffs instituted this suit in 1985 against the defendants for the partition of the land. Defendants answered, asserting fee title ownership, citing the five- and 10-year statutes of limitations. The case was tried before the court, which entered judgment denying plaintiffs' claim for partition and vesting title to the 60 acres in defendants. Upon request, the trial court filed findings of fact and conclusions of law.

This appeal turns on the legal effect of certain recorded instruments involving the 60-acre tract executed by the parties. In 1940 and 1953, the plaintiffs and defendants executed a pipeline easement to Dow Chemical across the property.[3] By executing the easements, plaintiffs exercised some ownership rights to the land as late as 1953.

In 1968, by a special warranty deed recorded in the deed records of Brazoria County, defendant Beatrice Woodard conveyed all her interest in one-acre out of the 60-acre tract to Marjie Rendon, her daughter. In 1984, the defendants executed an oil and gas lease on the tract. Following that oil and gas lease, plaintiffs filed this suit to partition the property.

The trial court made the following conclusions of law: Plaintiffs and defendants were cotenants and joint owners of the property beginning in 1917. From 1917 to the date of the filing of the lawsuit, defendants exercised continual dominion and control over the property, to the exclusion of all others, and plaintiffs exercised no possessory rights to the property. Defendants gave plaintiffs constructive notice of defendants' claim to all ownership rights to the 60-acre tract in 1968 by recording the special warranty deed to one acre in the deed records of Brazoria County. Defendants have complete fee ownership title to the 60-acre tract by virtue of the five and 10 year statutes of limitations pursuant to TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.025 and 16.026 (Vernon 1986).

## Adverse possession

Section 16.025 of the Texas Civil Practice and Remedies Code provides for a five-year statute of limitations if the following elements are satisfied:

1. Cultivation, use, or enjoyment of the property;

---

1. The plaintiffs are Bessie Spiller, Mabel Robinson Wrenn, Estate of Harriet Spiller Robinson, Parilee Spiller Long, and Robert Tillery.

2. The defendants are Beatrice Woodard, Nancy F. Patterson, Raleigh Lee Fanuiel, Amon Fanuiel, James C. Ward, Clarence Woodard, Marjie Randon, Claytonia Fanuiel, Issac Fanuiel III, Susan B. Fanuiel, Jewel Fanuiel, Theeter Fanuiel Kirtman, and other defendants named and unnamed in locations unknown for the partition of certain land in Brazoria County, Texas.

3. In the findings of fact number 12, the trial court referred to the 1940 instrument as an oil and gas lease. The instrument was clearly a *pipeline easement to Dow Chemical*, not an oil and gas lease. And, instead of one easement, there were two, the second dated 1953.

2. Payment of taxes;
3. Claims to the property under a registered deed; and,
4. Peaceable and adverse possession.

Section 16.026 of the Texas Civil Practice and Remedies Code provides for the ten-year statute of limitations if the following elements are satisfied:

1. Cultivation, use, or enjoyment of the property; and
2. Peaceable and adverse possession.

In this case, under either sections 16.025 or 16.026, the only element at issue is whether defendants gave notice to their cotenants of their adverse possession.

■ Adverse possession is statutorily defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX.CIV.PRAC. & REM. CODE ANN. § 16.021 (Vernon 1986). One cotenant claiming adverse possession against other cotenants must repudiate title in such a manner as to bring such repudiation to the notice of the other cotenants. *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex.1963); *Beard v. McLaren*, 798 S.W.2d 597, 601 (Tex.App.—Austin 1990, n.w.h.).

### The standard of review

■ The plaintiffs challenge the findings of fact and conclusions of law in four points of error. In an appeal from a bench trial, findings of fact have the same weight as a jury's verdict upon special issues. *IFG Leasing v. Ellis*, 748 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1988, no writ). Findings of fact are not conclusive, however, when a complete statement of facts appears in the record. *Pontiac v. Elliot*, 775 S.W.2d 395, 399 (Tex.App.—Houston [1st Dist.] 1989, writ ref'd). Findings of fact, therefore, are binding on this Court only if supported by evidence of probative force. *Id.*

■ The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them. *IFG Leasing*, 748 S.W.2d at 566. The standard used is the same as that applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *MCZ, Inc. v. Smith*, 707 S.W.2d 672, 678 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Although a trial court's conclusions of law may not be challenged for factual insufficiency, the trial court's conclusions drawn from the facts may be reviewed to determine their correctness. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

### 1. Adverse possession by constructive notice

■ In points of error one and two, plaintiffs allege the trial court erred in finding that they were charged with constructive notice of the 1968 recorded deed because it was later than their deed and it conveyed only one acre of the 60 acres. The trial court held that the recordation of the 1968 special warranty deed from Beatrice Woodard granting one acre to Marjie Rendon, her daughter, put plaintiffs on notice that defendants were asserting rights to the property adverse to theirs. The plaintiffs contend they were not charged with notice of the 1968 deed because the deed was recorded after their interest in the property vested. Relying on *Biswell v. Gladney*, 182 S.W. 1168, 1174 (Tex.Civ. App.—Amarillo 1916) *aff'd*, 213 S.W. 256 (Tex.1919), the plaintiffs argue that record notice goes forward, not backwards. We agree. The recordation of a deed, after plaintiffs acquired an interest in the property, did not give them constructive notice that their cotenant relatives claimed an interest adverse to theirs.

■ The plaintiffs also argue that they cannot be charged with notice of the 1968 deed because the law does not require a landowner to constantly examine the records to guard against instruments affecting his title. *Wert's Heirs v. Vick*, 203 S.W. 63, 64 (Tex.Civ.App.—Amarillo 1918, writ dism'd). Again, we agree. *See Rau v. Christy*, 383 S.W.2d 957, 958 (Tex.Civ. App.—Waco 1965, no writ) (attempted transfer by cotenant of entire property to tenant, and recordation of deed, did not put

other cotenant on notice of adverse holding).

We sustain plaintiffs' points of error one and two.

### 2. Adverse possession by inferred notice

In point of error three, the plaintiffs urge that the defendants did not meet their burden of proof on the affirmative defense of the statutes of limitations. The plaintiffs maintain the defendants did not present evidence that their possession of the disputed property was adverse, and there is no evidence that shows defendants repudiated the cotenancy.

The defendants counter with the argument that the law infers notice of adverse interest to the nonpossessory cotenant when the possessory cotenant's claim of title and adverse occupancy is long, continuous, notorious, exclusive, and inconsistent with the title of others, citing *Vasquez v. Meadors*, 291 S.W.2d 926 (Tex.1956), and *Mills v. Vinson*, 342 S.W.2d 33 (Tex.App.—Texarkana 1960, writ ref'd n.r.e.). The defendants contend that notice of adverse possession against a cotenant can be inferred when possession is long term and open, citing *Tex–Wis v. Johnson*, 534 S.W.2d 895, 901 (Tex.1976) (which did not involve cotenants), and *Mills v. Vinson*, 342 S.W.2d at 33 (Tex.Civ.App.—Texarkana 1960, writ ref'd n.r.e.).

In *Vasquez*, the owner of land leased it in 1917 to a tenant for one year, who placed his caretaker, Vasquez, on the land to look after his cattle. After the lease expired, Vasquez continued to live on the land and claimed 100 acres of the land as his own from 1922 to the time of the suit in 1949. The supreme court held that Vasquez repudiated the tenancy by separating the 100 acres from the remainder of the land, fencing it, building six houses, a levee, and asserting all indicia of ownership without challenge. 291 S.W.2d at 927–28. *Vasquez*, which involved a landlord and tenant, does not compel us to find for these defendants. Here, we have joint ownership of land instead of the relationship between landlord, tenant, and the tenant's employ-

ee, and we have no equivalent acts of disseizin. Thus, *Vasquez* does not apply.

In *Mills*, one set of cotenants occupied the land for a total of 60 years, 10 years in actual residence and 50 years by a lease to third parties. The cotenants in possession collected rents from the property, built a house on the property, made other improvements, paid taxes, cultivated the land, sold timber, and exercised all other indicia of ownership. 342 S.W.2d at 38. On the facts in *Mills*, the Texarkana court said

> It is not necessary that actual notice of an adverse holding and disseizin be brought home to a cotenant when the adverse occupancy and claims of title is so long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the cotenant out of possession. . . .

342 S.W.2d at 40. We agree with the rationale of *Mills*, but we do not find that it applies in our case. Here, we do not have a comparable quality of possession adverse to the nonpossessory cotenants. Significantly, in *Mills*, the nonpossessory cotenants never made a claim for any of the profits from the leases; here, the nonpossessory cotenants exercised ownership rights and received compensation, as late as 1953, for executing an easement.

■ As the court said in *Todd v. Bruner.*

> Insofar as the true owner of property is concerned, there is a vast difference between the notice of adverse claim conveyed by the presence of a stranger in possession and that of a cotenant in possession. It is not unusual for one tenant to have exclusive possession and make beneficial use of lands for rather long periods of time and ordinarily such use is with the acquiescence of the other cotenants.

365 S.W.2d at 159–60. Taking into account the joint pipeline easements executed in 1940 and 1953, the trial court's finding that defendants had continuous possession of the property since 1917 was clearly erroneous. Defendants' continuous and exclusive

possession could not begin until sometime after 1953.

 Although the record and findings of fact indicate that, from sometime after 1953, the defendants held the land exclusively, used it for cultivation, and paid the taxes on it, these facts alone do not suffice to give notice of adverse possession by a cotenant. *Horrocks v. Horrocks*, 608 S.W.2d 733, 736 (Tex.Civ.App.—Dallas 1980, no writ). The defendants' claim to the property was not "so long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others," that the law will raise the inference of notice to the plaintiffs, the cotenants out of possession. We sustain plaintiffs' point of error number three.

4. Adverse possession by payment of taxes

In point of error four, plaintiffs argue the trial court erred in finding that the defendants met their burden of proof on the affirmative defense of the statutes of limitations based on payment of taxes. Paying taxes is relevant only under the five-year statute of limitations. TEX.CIV. PRAC. & REM.CODE ANN. § 16.025. Because we have sustained the other points of error, we do not need to reach this one.